Richard V. Hyland v. Commissioner.
Hyland v. Commissioner
Docket No. 12543.
United States Tax Court
1948 Tax Ct. Memo LEXIS 209; 7 T.C.M. (CCH) 236; T.C.M. (RIA) 48060; April 21, 1948
*209 On December 23, 1942, the board of directors of an engineering corporation adopted a resolution allowing petitioner, its president and controlling stockholder, compensation of $40,000 for services rendered from February 1, 1942, to January 31, 1943, in connection with two Navy contracts. The corporation made no book credit for this amount until the latter date. Petitioner received the $40,000 in cash on March 6, 1943. Held, that there was no constructive receipt of income by petitioner in 1942 and the entire amount is taxable to him in 1943. Frank T. Kleiger, Esq., for the petitioner. Thomas R. Wickersham, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the calendar year 1943 in the amount of $28,979.51. Certain minor *210 adjustments to 1942 income, computed pursuant to the Current Tax Payment Act of 1943 are not in controversy. The sole issue is the amount of income, if any realized by petitioner in 1943 by reason of the receipt of cash in that year as compensation for services rendered in 1942. Findings of Fact Richard V. Hyland, petitioner, is an individual who resided in New York City during the period here involved. In 1942 and 1943 he kept his books and filed his income tax returns on a cash receipts and calendar year basis. These returns were filed with the collector of internal revenue for the second district of New York. Madigan-Hyland Co., Ltd., hereinafter referred to as the corporation, was organized under the laws of New Hampshire on November 3, 1941. It maintains its records and files its income tax returns on the accrual basis, for a fiscal year beginning February 1 and terminating January 31. Its capital stock structure consists of 200 shares of common stock without nominal or par value, of which 175 shares were issued and outstanding in December, 1942. Petitioner was president of the corporation throughout 1942 and 1943, having been elected to that office by the board of directors *211 on November 10, 1941. In the taxable years petitioner owned 85.71 per cent of the total issued and outstanding stock of the corporation. He was an engineer and supervising manager for the corporation in connection with the construction of largescale military bases. On December 16, 1941, the corporation was awarded a Navy contract, No. NOy-5182, for the installation of aviation, ordnance, and fleet operating facilities at Roosevelt Roads, Puerto Rico. The cost of the project was originally estimated to exceed $10,000,000 but was increased in 1942 to approximately $21,000,000. Petitioner spent considerable time and effort in directing, supervising, and managing the work during the first 10 1/2 months of 1942. On November 10, 1942, the United States Navy awarded another contract, No. NOy-5888, to the corporation, which involved an engineering survey to determine whether additional war production facilities could be accommodated in the already congested areas located in California and New England. The survey was to be completed by January 15, 1943. From November 15, 1942, to December 23, 1942, petitioner spent his entire time conducting the investigation and research and made a confidential *212 written report to the Navy. On the latter date it was contemplated that the survey would be completed by January 15, 1943, in accordance with the specified time limit. A special meeting of the corporate board of directors was held on December 23, 1942, the primary purpose of which was to consider the matter of petitioner's compensation for the fiscal year ending January 31, 1943, arising out of his work on the Navy contracts. A resolution was adopted and recorded in the minutes of the meeting, as follows: "WHEREAS, the compensation for the services of Richard V. Hyland in connection with Contract NOy-5182 for the fiscal year ending January 30, 1943, has been fixed in the sum of $25,000. and his compensation in connection with Contract NOy-5888 has been fixed in the sum of $15,000., NOW, THEREFORE, IT IS RESOLVED: "That the Corporation pay to Richard V. Hyland for his compensation and services, aforesaid sums aggregating $40,000." It is stipulated that $22,916.66 of the $25,000 voted as remuneration for services in connection with Navy Contract No. NOy-5182 represented compensation allocable to the 11-month period from February 1, 1942, to December 31, 1942. It was also stipulated *213 that $11,250 of the $15,000 authorized for services rendered on Navy Contract No. NOy-5888 represented compensation allocable to the period from November 15, 1942, to December 31, 1942. The records of the corporation were closed on January 31, 1943, the last day of its fiscal year then ended. At that time the sum of $40,000 was charged as an expense of the business to "Officers Salaries" and credited to an account labeled "Accrued Payrolls Payable." On March 6, 1943, when the full amount of $40,000 was paid in cash to petitioner, the payment was charged to the aforesaid "Accrued Payrolls Payable." The balance sheet of the corporation as of December 31, 1942, is set forth below: ASSETS
Current Assets: Cash on hand and in banks
$ 24,979.60
Accounts Receivable: U.S. Government
$153,203.23
Other
564.46
153,767.69
Work in Process: Contract NOy 5182
$ 42,321.88
Contract NOy 5888
26,713.84
69,035.72
Total Current Assets
$247,783.01
Other Assets: Equipment
$ 250.00
Deposits
1,425.00
1,675.00
Total Assets
$249,458.01
LIABILITIES & CAPITAL
Current Liabilities: Notes Payable to Madigan-Hyland [1]
$135,500.00
Payroll Taxes Payable
406.17
Reserve for Federal Income Taxes
13,855.97
$149,762.14
Capital Stock - 175 shares - no par value
56,550.00
Surplus
43,145.87
Total Liabilities and Capital
$249,458.01
*214 Petitioner filed his individual income tax return for 1942 on March 30, 1943, pursuant to an extension of time granted by respondent. He did not report therein any of the $40,000 authorized by the board of directors in December, 1942. Petitioner filed an individual income and victory tax return for 1943 on March 14, 1944, in which he reported compensation from the corporation in the amount of $22,500. This figure included $5,833.34 of the $40,000 identified above. Petitioner filed an amended return for 1942 on or about April 11, 1946, in which he reported $34,166.66 as salary earned from February 1, 1942, to December 31, 1942, in connection with the Navy contracts. In determining the deficiency herein, respondent treated this sum as taxable income realized in 1943. Opinion ARUNDELL, Judge. Petitioner contends that $34,166.66 of the $40,000 voted by the board of directors on December 23, 1942, was constructively received by him in 1942 and was properly reported in his amended income tax return for that year. Respondent takes the view that the sum constituted taxable income in 1943, the year in which the actual cash payment was received by petitioner. *215 It is a fundamental rule of tax law that an individual taxpayer who keeps his records and files his returns on the cash receipts basis is not taxable on his income until the year of receipt. This resulting immunity from tax prior to the physical receipt of income permitted cash basis taxpayers to select the year in which to reduce income to possession, thereby rendering it subject to tax. It was to enable the Commissioner to circumvent the avoidance and possible evasion of tax that the theory of actual receipt was implemented with the doctrine of constructive receipt as a test of remuneration of income. See Mertens, Law of Federal Taxation, section 10.01. In Cecil Q. Adams, 20 B.T.A. 243, affd., 54 Fed. (2d) 228, we said: "Each case in which the Commissioner attempts to apply the rule of constructive receipt will depend upon its own facts as to whether or not there is justification for the application of such a rule. But, in general, income should not be construed to have been received prior to the date of actual receipt except where a taxpayer turns his back upon income or does not choose to receive income which he could have if he chose." Section 42 of the Internal Revenue Code *216 provides in general that "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer * * *." The Commissioner has adopted in section 29.42-2 [2] of Regulations 111 certain tests for determining whether income is taxable in a particular year by virtue of constructive receipt. We have approved these criteria which were similarly stated in section 19.42-2 of Regulations 103, applicable to years prior to the taxable years before us. Pedro Sanchez, 6 T.C. 1141; Van W. Peabody, 5 T.C. 426. *217 With respect to undrawn salaries of corporate officers, we have stated the tests of constructive receipt in C. E. Gullett, 31 B.T.A. 1067, to be as follows: "It is clear that the doctrine of constructive receipt is to be sparingly used; that amounts due from a corporation but unpaid, are not to be included in the income of an individual reporting his income on a cash receipts basis unless it appears that the money was available to him, that the corporation was able and ready to pay him, that his right to receive was not restricted, and that his failure to receive resulted from exercise of his own choice. [cases cited]." The circumstances of the instant proceeding, in our opinion, do not warrant the application of the principle of constructive receipt. The resolution adopted by the board of directors on December 23, 1942, fixed the compensation of petitioner for his services in connection with two Navy contracts, at least one of which was not fully completed in 1942. The sum voted, in amount of $40,000 and consisting of $25,000 for Contract NOy-5182 and $15,000 for Contract NOy-5888, was intended to compensate him for services in the corporation's fiscal year ending *218 January 31, 1943. There is no evidence that petitioner had a personal drawing account. The corporation did not credit any corporate account in 1942 for any portion of the approved remuneration, nor were the amounts allocable to the last 11 months of 1942, totaling $34,166.66, specially segregated or set apart by the directors so as to be placed under petitioner's unrestricted control. It was not until January 31, 1943, that the compensation was entered on the corporate books. The proceeds were not physically received by petitioner until March 6, 1943. While it is true that petitioner was the controlling stockholder and there were sufficient current assets in 1942 to have accomplished payment without financial embarrassment to the corporation, the fact remains that petitioner has not satisfied the initial requirement stated in the regulations, namely, that the compensation must be "* * * credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time * * *." The failure to make book entires in 1942 per se not only would negative an unrestricted claim to, and the ready availability of, payment in that year, but it indicates to us that neither *219 the petitioner nor the board of directors really contemplated any withdrawal of the compensation prior to 1943. J. A. C. Steur, 7 T.C. 1075. Cf. Burns v. Commissioner, 31 Fed. (2d) 399; Pedro Sanchez, supra. Moreover, the manner in which the petitioner treated the compensation in his tax returns convinces us all the more that he did not originally consider the $34,166.66 to be 1942 income. Indeed, that portion of the total compensation which he now claims was realized as income in 1942 was not reported as income for either 1942 or 1943 until an amended return for 1942 was filed on or about April 11, 1946. Petitioner did not choose to testify, nor was any other valid evidence offered to explain the delay. In short, we think that petitioner's "* * * vacillation in the manner of treatment of the income in his tax return does not lend strength to his contention that the funds were actually available to him and subject to his demand and control * * *" in 1942. Van W. Peabody, supra. We hold, therefore, that the $40,000 received by petitioner on March 6, 1943, constituted taxable income in that year. Decision will be entered *220 under Rule 50. Footnotes
1. A partnership.↩
2. SEC. 29.42-2. Income Not Reduced to Possession. Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although no then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. * * *↩